CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

OCT 21 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RHONDA G. WALKER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 7:08CV00628 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

Plaintiff, Rhonda Walker ("Walker"), brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income under the Social Security Act ("Act"). The issues on appeal are whether the Administrative Law Judge ("ALJ") misinterpreted the opinion of a consultative examining physician, improperly evaluated Walker's subjective complaints of pain, and fully considered her mental limitations. The administrative record contains no opinions from treating sources suggesting that Walker is disabled, the narrative of the consultative examining physician's report confirms the ALJ's interpretation of his functional evaluation, and the ALJ appropriately considered Walker's complaints of pain. As far as Walker's physical condition is concerned, therefore, the ALJ's decision is supported by substantial evidence. However, the record reflects that Walker was hospitalized several times in 2006 for psychiatric reasons, and there is no medical opinion in the record regarding her mental state following an extensive hospitalization in October-November, 2006. Further, there was no medical review of her 2007 outpatient psychiatric care. Therefore, this case must be **REMANDED** to the Commissioner for

consideration of the impact of her mental impairments on her functional capacity beginning on April 25, 2006, the date of her first psychiatric hospitalization in the record.

I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that his ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor reweigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, whether he or she (5) can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520) (2005). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Heckler, 461 U.S. at 460. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the Residual Functional Capacity ("RFC"),[1] considering the claimant's age, education, work

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g. pain). See 20 C.F.R. § 404.1529(a).

experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Walker, born in 1965, filed her application for supplemental security income ("SSI") benefits on February 2, 2006, claiming that she was disabled from November 15, 2001 due to back pain and anxiety. (Administrative Record ("R.") at 54, 72.) Walker completed high school, and the bulk of her work history was working in retail or as a cashier. (R. 464.)

Walker argues that she is disabled by her cervical and lumbar degenerative disc disease and certain mental impairments. Walker has a long history of back problems, with multiple low back surgeries predating her alleged onset date. Walker also has a history of anxiety disorder, also dating back to the period prior to the alleged onset. (R. 168.) While Walker has this history, there are scant medical records in the four years after her alleged onset date that reflect any treatment for low back pain. Indeed, during the 2002-05 period, Walker's principal medical complaints concerned a seizure disorder and chronic hepatitis C.

Shortly after Walker's SSI application was filed in early 2006, Walker had a follow up visit with Dr. Katrina G. Murphy concerning her low back pain. (R. 359.) Dr. Murphy reported in an Office Summary dated February 28, 2006 that "[o]verall she is doing fairly well. She does continue to have some pain in her back." (R. 359.) On that day, Dr. Murphy completed a Medical Evaluation for Walker indicating that she was unable to work for 60 days, providing additional medications, and scheduling her for a course of physical therapy. (R. 355-56.) The medical records reflect she began a course of outpatient rehabilitation treatment for low back pain at the Memorial Hospital of Martinsville. (R. 351.) In a subsequent Office Summary dated

March 28, 2006, Dr. Murphy noted that the physical therapy was helping some and that "she feels that her functional capacity is increasing." (R. 364.) A physical therapy update dated May 10, 2006 stated that Walker reported increased low back pain radiating to her legs, but noted that "these symptoms are recent." (R. 347.) Walker reported such pain to Dr. Murphy on May 16, 2006, and noted relief with use of a TENS unit. Dr. Murphy's physical exam noted "full strength in all extremities." (R. 373.) The administrative record contains Office Summaries for visits by Walker to Dr. Murphy during June, July, August, and September, 2006. Most of these visits concerned adjustments to medication given Walker's psychiatric issues. (R. 379-80, 377, 384, 388-88A.) During the last visit, on September 12, 2006, Dr. Walker noted that "[m]ore recently she seems to have been doing well," but right knee pain was noted following a fall. (R. 388.) The physical exam portion of the summary reported that "[s]he continues to have a nonfocal neurologic exam with full strength in bilateral upper and lower extremities in all muscle groups." (R. 388.)

Likewise, Walker's records reflect a history of anxiety and depression, but the records do not reflect a consistent pattern of treatment prior to 2005 or any hospitalizations prior to April 25, 2006. The first mention of a possible anxiety disorder is contained in a neurology consult note dated October 6, 2003 authored by Dr. Cormac A. O'Donovan at Wake Forest Baptist Medical Center, where Walker was being seen for evaluation of a seizure disorder. (R. 165.) Nearly a year later, on September 21, 2004, Claudia Mikulaninec, a nurse practitioner in the gastroenterology-digestive health center at Wake Forest Baptist Medical Center, who was seeing Walker in consultation for her hepatitis, noted Dr. O'Donovan's assessment of possible anxiety disorder. CFNP Mikulaninec added that Walker "has had a stressful past history in terms of

5

abuse and she also tells me that she attempted suicide 8 years ago." (R. 181.) A month later, CFNP Mikulaninec recommended a psychiatric referral for Walker for depression. (R. 177-78.) Walker was seen for depression at Piedmont Community Services on April 15, 2005, (R. 206), and received outpatient mental health treatment thereafter through that agency. The record also contains records regarding two hospital admissions for anxiety, depression, and suicidal ideation in April and May, 2006. (R. 226-34, 217-25.) At the administrative hearing held on June 14, 2007, Walker testified that she was also admitted to the psychiatric unit at the Memorial Hospital of Martinsville "around the middle or the end of October into about the middle of November." (R. 469.) The ALJ noted this later hospitalization in his decision, and further wrote that "[s]he acknowledged that she has had about six psychiatric admissions. She indicated that she had had none this year." (R.19.) The ALJ's decision deemed certain recent treatment notes from Piedmont Community Services from April and May, 2007 to be "good news," indicative of improvement in her mental health condition. (R. 20-21.)

On June 8, 2006, state agency physician Dr. William Humphries performed a physical examination of Walker. (R. 309.) At that time, Walker complained of a long history of back and neck pain. Dr. Humphries' examination noted a slightly reduced range of motion in her neck and some tenderness in her right shoulder muscle. (R. 310.) Dr. Humphries also noted slightly reduced back range of motion and tenderness, and a negative straight leg raise but no muscle spasm. (R. 311.) Full range of motion of Walker's legs was noted along with normal strength. No neurological problem was noted other than the fact that Walker guarded her back movement. (R. 311.) Dr. Humphries noted no problems with Walker's mental status. (R. 312.) Dr. Humphries concluded as follows:

6

> Based on objective findings of this evaluation, the examinee would be limited to sitting, standing and walking six hours in an eight-hour workday, and lifting 25 pounds occasionally and 10 pounds frequently. She would be limited to occasional climbing, stooping, kneeling, crouching, and crawling. No overhead work. She should avoid heights and hazards. There would be no fumes restriction.

(R. 312.)

The administrative record contains two physical RFC assessments by state agency doctors based on a review of Walker's medical records. None of these assessments finds Walker disabled. On June 14, 2006, Dr. Michael Hartman found that Walker could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, and sit about 6 hours in an eight hour workday. (R. 315.) Dr. Richard Surrusco reached the same conclusion in his review performed on October 4, 2006. (R. 398.)

The administrative record also contains two mental RFC assessments performed by state agency psychologists. In a review done on June 15, 2006, E. Hugh Tenison, Ph.D., found Walker's mental allegations only partially credible, noted no marked limitations, and concluded that "[a]t most, the claimant may have moderate difficulties with concentration and pace." (R. 339.) Consistently, on October 6, 2006, Richard J. Milan, Jr., Ph.D., noted Walker's bipolar disorder but concluded that the "claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. 408.) Significantly, both state agency mental health evaluations predate Walker's lengthy psychiatric hospitalization in late October-November, 2006 and her treatment at Piedmont Community Services in 2007, and no medical assessment in the record considers Walker's mental condition as reflected in that hospitalization or subsequent treatment.

**III.**

It is clear from this record that Walker has not met her burden of establishing that she is disabled physically. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). There is no medical opinion in the record stating that she is permanently disabled physically, and two state agency doctors completed physical RFC assessments indicating that Walker was capable of working. Based on the physical assessment performed by Dr. Humphries, the ALJ posed a hypothetical question to the Vocational Expert ("VE") at the hearing, who concluded that Walker could return to her past relevant work as a cashier. (R. 474-77.)

Walker argues that the ALJ misreads and misinterprets Dr. Humphries' physical assessment, and argues that because Dr. Humphries' narrative indicates that Walker "would be limited to sitting, standing and walking six hours in an eight-hour workday," (R. 312), she cannot work full time as she could not complete an eight hour day. However, at the administrative hearing, the VE interpreted Dr. Humphries' assessment as limiting Walker to six hours of sitting, standing **or** walking, rather than six hours of sitting, standing **and** walking. (R. 478.) As the ALJ explained at the administrative hearing:

> And that's reinforced by the fact that the DDS physicians also indicated the person could do light work based on review of the evidence which includes Dr. Humphries' report which also includes his findings and conclusions in which doesn't say anything that would significantly limit standing, sitting or walking.

(R. 479.)

While it is certainly true that the conclusion of Dr. Humphries' narrative evaluation states that Walker is limited to "sitting, standing and walking six hours in an eight-hour workday," (R. 312), it would be an unreasonable interpretation of his evaluation to suggest that he intended

8

to conclude that Walker was permanently disabled as nothing in the rest of his report suggests such a conclusion. While Dr. Humphries' report notes Walker's subjective complaints of back pain, his examination revealed only a slight reduction in the range of motion of her neck and back, and some tenderness in her right shoulder and low back muscles. (R. 310-11.) Neither of the doctors who reviewed Walker's medical records, and expressly commented on Dr. Humphries' evaluation, read his report as Walker contends it should be read. Rather, both Drs. Hartman and Surrusco each concluded that Walker was limited to standing and/or walking for a total of 6 hours in an 8 hour and sitting for a total of 6 hours in an 8 hour day. (R. 315, 398.) Further, both the VE and the ALJ read Dr. Humphries' report the same way. Given the absence of a single report from a treating physician that Walker was physically disabled, the absence of any notation by Dr. Humphries that his examination revealed any objective findings of a disabling condition, and the consistent opinions of the two state agency doctors who reviewed all of Walker's medical records, it is unreasonable to interpret Dr. Humphries' assessment as Walker suggests. Rather, the only reasonable construction consistent with the remainder of Dr. Humphries' report is the one placed on it by the VE and ALJ at the administrative hearing: that Walker was limited to sitting, standing or walking for six hours in an eight hour day. Plainly, substantial evidence in the record supports this finding by the ALJ.

Walker also argues that the ALJ failed to credit properly her subjective complaints of pain, and that these were essentially ignored as Dr. Humphries' report states that it was "[b]ased on objective findings of this evaluation." (R. 312.) In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th

Cir. 1996). Accordingly, the ALJ is not required to accept Walker's subjective allegation that she is disabled by pain, but rather must determine, through an examination of the objective medical record, whether she has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers"). Then, the ALJ must determine whether Walker's statements about her symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ was correct to find Walker's allegations of disabling pain not supported by her medical records, especially given the nearly four year gap in treatment, the absence of any significant functional limitations, and the lack of any opinion by any treating doctor that Walker is physically disabled. Further, the court rejects Walker's argument that her subjective complaints of pain were ignored by the Commissioner because the ALJ relied on Dr. Humphries and his evaluation was predicated only on objective findings. To be sure, Dr. Humphries relied on his objective findings as an examining physician, as that was the point of conducting an examination. However, Dr. Humphries' evaluation also plainly notes Walker's subjective

complaints of pain, which any practitioner needs to assess when conducting a medical exam. Further, in his detailed decision, the ALJ expressly considered Walker's subjective complaints of pain, yet found her not to be fully credible. (R. 24.) Thus, substantial evidence supports the ALJ's decision as regards Walker's claimed physical disability.

## IV.

Concerning Walker's claimed mental impairments, the ALJ also provided the VE with a hypothetical incorporating the findings of Dr. Milan, a state agency psychologist who reviewed Walker's medical records, and the VE concluded that Walker could return to work as a cashier. (R. 476.) The Commissioner argues that this is sufficient to constitute substantial evidence. The problem with this case is that neither Dr. Milan nor the other state agency psychologist, Dr. Tenison, considered the treatment records from Walker's lengthy psychiatric hospitalization in October-November, 2006 and the clinical treatment records from Piedmont Community Services concerning the period from December, 2006 to May, 2007. The records from the lengthy psychiatric hospitalization are simply not in the record. While the ALJ provided a rosy assessment of the more recent clinical treatment notes, there was no state agency psychologist review or other medical opinion in the record concerning them. To be sure, as reflected in the ALJ's decision, some of the clinical notes from early 2007 are more upbeat than others. However, looking at those notes as a whole, it is difficult to see how the ALJ could characterize Walker's overall mental health status as "good news." For example, the May 24, 2007 clinical treatment note reports "[c]lient's affect very flat, reports that she has been having severe crying spells over the last week." (R. 437.) The last two clinical treatment notes in the file, concerning May 29 and 30, 2007, reflect concerns regarding excessive sleep on her part. (R. 435-36.) While

11

the ALJ considered these symptoms to be a "temporary setback," (R. 21), attributable to a house fire, it is hard to reconcile this conclusion with Walker's history of repeated psychiatric hospitalizations less than a year before. Without any medical evaluation of the October-November, 2006 hospitalization and an assessment of the early 2007 clinical treatment notes in light of her history, the ALJ's conclusion that Walker's psychological status constituted "good news" is conjectural and not supported by substantial evidence. The need to consider Walker's late 2006 hospitalization is even more important given the fact that the early 2007 clinical treatment notes are fairly cursory. In short, given the severe problems Walker encountered in 2006, resulting in multiple stays at an inpatient psychiatric facility, the disability decision needs to take into consideration the entire course of Walker's psychiatric treatment in 2006 and 2007, rather than focus on a few "good news" snapshots from clinical treatment notes in early 2007. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997) (stating that an agency must analyze and sufficiently explain the weight given to obviously probative evidence.)

In sum, therefore, the ALJ's decision that Walker did not meet her burden of demonstrating a mental disability prior to 2006 is supported by substantial evidence and correct. Given Walker's multiple psychiatric hospital admissions in 2006, however, the longest and most recent of which is not reflected in the administrative record, this case must be **REMANDED** for further administrative consideration. Such consideration on remand should concern Walker's mental impairments beginning on April 25, 2006, the date of her first psychiatric hospitalization. On remand, the Commissioner should obtain a consultative psychiatric examination of Walker to aid in the decisional process.

12

In accordance with the Memorandum Opinion entered this day, the motions for summary judgment filed by both the Commissioner and plaintiff are **GRANTED** in part and **DENIED** in part. Substantial evidence supports the Commissioner's conclusion that disability was not established prior to plaintiff's series of psychiatric hospitalizations beginning on April 25, 2006. However, because evidence of a lengthy psychiatric hospitalization in the fall of 2006 and subsequent outpatient treatment was not reviewed by any state agency or other psychologist or psychiatrist, it is **ORDERED** that this case be **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings necessary to evaluate plaintiff's mental impairments for the period after April 25, 2006. In this regard, the Commissioner should obtain a consultative psychiatric examination of Walker to aid in the decisional process.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Enter this 21st day of October, 2009.

Michael F. Urbanski
United States Magistrate Judge